## Cheek et al. v. Commonwealth ex rel. Harrington, Commonwealth's Atty.

(Decided Jan. 11, 1938.)

WHEELER & WHEELER for appellants.

HUBERT MEREDITH, Attorney General, and J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Commonwealth of Kentucky, on relation of J. L. Harrington, Commonwealth's attorney for the Twenty-Fourth judicial district, instituted this equitable action in the Johnson circuit court against Con Cheek and Spicy Quillen, alleging in substance and effect in the petition that Con Cheek owned a house and other small buildings on a tract of land on the Garrett highway which tract lies partially in Johnson and partially in Martin counties and that he rented or leased the house to his codefendant, Spicy Quillen, or permitted her to use the houses for immoral purposes in the operation of a business commonly known as roadhouse or bawdyhouse; that the latter kept and maintained in the building musical instruments and such other furniture and paraphernalia as is ordinarily used in such business and was and had for several months prior to the filing of the petition been maintaining a nuisance therein by inviting and permitting lewd men and women to congregate for immoral purposes and to drink, swear, fight,

and use lewd, boisterous, foul, insulting, and threatening language to the public nuisance of all good citizens in the community, etc.; all of which was done with the knowledge and consent of Con Cheek. The prayer of the petition is that the defendant be enjoined from using the premises in question for the purposes indicated or from permitting the acts and conduct complained of in the petition.

A demurrer to the petition having been overruled, the defendant by joint answer denied the allegations thereof and in a second paragraph alleged that Con Cheek was the owner of a tract of land on which a storehouse and dwelling combined had been built and wherein Spicy Quillen conducted a grocery store, soft drink and beer stand, but that the business in all respects was conducted in conformity with the law.

On final hearing the chancellor granted the relief sought by the petition and adjudged that the nuisance alleged in the petition be abated and the Commonwealth recover its costs and that the Commonwealth's attorney be allowed $200 to be taxed as costs of the action and that the costs be adjudged a lien against the property described in the petition. Defendants are appealing.

While a number of grounds are argued and relied on for reversal, the conclusion we have reached concerning the sufficiency of the evidence to support the chancellor's finding will render it unnecessary to discuss any of the other grounds.

Apparently the Commonwealth was proceeding under section 3941m-1 et seq., Kentucky Statutes; section 3941m-1 provides:

"That whoever shall erect, establish, continue, maintain, use, own, occupy, lease or sub-lease any building, erection or place used for the purpose of lewdness, assignation or prostitution in the Commonwealth of Kentucky shall be guilty of a nuisance, and the building, erection or place and the ground itself in or upon which such lewdness, assignation or prostitution is conducted, permitted or carried on, continued or exists, and the furniture, fixtures and musical instruments therein and all other contents thereof are declared a nuisance and shall be enjoined and abated as hereinafter provided."

It will be noted that this section relates only to

lewdness, assignation, or prostitution and not to common-law nuisances generally. It will further be noted that the petition is not confined to the acts and conduct declared to be a nuisance under the statute but follows in substance the form of the indictment for nuisances generally and includes acts and conduct not embraced in the statute. The evidence was permitted to take a rather wide range and included acts and conduct not denounced by the quoted section of the statute.

Section 3941m-3 provides in effect that in actions of this character evidence of general reputation of the place is admissible for the purpose of establishing the existence of the nuisance mentioned in the quoted section. There was considerable evidence introduced by the Commonwealth concerning the general reputation of the place conducted by Spicy Quillen but much related to acts and conduct other than that enumerated in section 3941m-1. Most of the witnesses who testified to the reputation of Spicy Quillen or the place she conducted lived in or near Inez which is 10 or 12 miles from the place. No one living in the immediate vicinity testified as to any specific acts or conduct mentioned in the statute nor to any bad reputation of the place or those who conducted it. On the other hand two or three witnesses who lived in the vicinity and were often at the place testified that they never saw any improper conduct and had heard no complaint of the manner in which the place was conducted. The only evidence otherwise bearing on the matters referred to in the statute was that of a deputy sheriff and a young man who drove him out to the place one night. He testified that because of complaints he drove out and when he arrived the building was in darkness but a young man met him and invited him in. When they went in a light was switched on and he saw Spicy Quillen and some man lying on a divan. She was only partially clad, was rather boisterous in her conduct, and appeared to be intoxicated. The young man who drove the deputy sheriff out testified to the same effect. Spicy Quillen testified that she remembered nothing that occurred on the occasion of the deputy sheriff's visit to her place but was told by friends the next morning of her misconduct. The evidence shows and she testified that she received severe burns some months before this and that the doctor had been giving her medicine containing opiates to alleviate her suffer-

ing; that on the night in question she had a severe headache and asked a girl in the place to get her some aspirin; than she took 3 or 4 of the tablets brought her and learned the next day that, instead of aspirin, the girl had brought the tablets containing the opiate.

So summing up, we have some evidence concerning the reputation of the place as respects acts and misconduct denounced by the statute coupled only with the incident testified to by the deputy sheriff and his driver which might be considered as substantive evidence to corroborate the proof of the petition of the bad reputation of the place.

In King v. Commonwealth, 154 Ky. 829, 159 S. W. 593, 48 L. R. A., N. S., 253, it was held that the reputation of a place as being a bawdyhouse was not sufficient in the absence of substantive proof to corroborate it. While as already indicated the evidence was not confined to the matters mentioned in the statute, there was some evidence of reputation concerning those matters, but it is at once apparent and we are constrained to hold that the one incident testified to by the deputy sheriff and his driver is not sufficiently corroborative of the evidence of bad reputation to establish the acts and conduct condemned by statute or to sustain the judgment.

Wherefore the judgment is reversed for proceedings and judgment in conformity with this opinion.